**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| JOYCE ABNEY and CLIFFORD ABNEY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | No. 4:06CV1258-DJS |
| ) | |
| CITY OF PARK HILLS, MISSOURI, ) | |
| RICHARD MCFARLAND, and ) | |
| MARK ABNEY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

The matter currently before the Court is the motion for summary judgment of defendants City of Park Hills and Officer Richard McFarland ("McFarland").[1] The motion has been fully briefed and is now ready for disposition.

**Procedural Background**

This action stems from an automobile accident that occurred on May 12, 2006. Defendant Mark Abney ("Mark") was allegedly driving while intoxicated, with Jason Abney, Sr. ("Jason") riding in the passenger seat. Around 11:15 p.m., defendant McFarland — an officer working for defendant City of Park Hills, Missouri — executed a stop of Mark's vehicle. Plaintiffs allege that, although McFarland knew or should have known that Mark was intoxicated, McFarland did not perform a sobriety test on Mark.

---

[1]Pursuant to a settlement, partial judgment resolving plaintiffs' claims against defendant Mark Abney has already been entered. See Doc. #48.

Rather, after issuing Mark four traffic citations, McFarland released Mark, which allowed Mark to continue to drive while intoxicated. Shortly thereafter, Mark drove his vehicle into an embankment on the side of the road. Both Mark and Jason died in the accident.

Plaintiffs in this case are Joyce Abney and Clifford Abney, Sr., the parents of Jason. See Doc. #19. On August 21, 2006, plaintiffs filed this action with the Court.[2] Counts I and II of the amended complaint assert that defendants' actions violated Jason's Fourteenth Amendment rights by subjecting Jason to excessive and unreasonable force and that, pursuant to 42 U.S.C. § 1983, plaintiffs are entitled to recover damages;[3] Count IV asserts a state law wrongful death claim. On June 22, 2007, defendants filed a motion for summary judgment arguing that (1) the undisputed facts do not support § 1983 claims of excessive and unreasonable force, and (2) defendants are entitled to immunity from plaintiffs' state law claim. In opposition to defendants' motion for summary judgment, plaintiffs do not argue the existence of a genuine issue of material fact with regard to the claim that defendants used excessive or unreasonable force. Rather, plaintiffs' opposition

---

[2]The amended complaint has five counts. Counts III and V have previously been dismissed. See Doc. ##51, 55.

[3]Count I is a § 1983 claim brought against McFarland for violation of Jason's civil rights under the Fourteenth Amendment. Count II is a § 1983 claim brought against the City of Park Hills for municipal liability under the theories of (1) delegation of policy making authority to McFarland, and (2) failure to train, supervise, and control McFarland.

consists of an argument that, pursuant to the state-created danger doctrine, McFarland's actions violated Jason's substantive due process. Defendants, in reply, contend that substantive due process was not pled in the amended complaint and therefore is not properly before the Court; however, defendants also address the merits of plaintiffs' substantive due process arguments.[4]

### Standard of Review

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "Although the moving party has the

---

[4]The Court notes that the amended complaint asserts a Fourteenth Amendment excessive-force claim, but that it is the "Fourth Amendment's prohibition against unreasonable seizures of the person [that] applies to excessive-force claims that 'arise in the context of an arrest or investigatory stop of a free citizen.'" Wilson v. Spain, 209 F.3d 713, 715 (8th Cir. 2000) (emphasis added); see also Graham v. Connor, 490 U.S. 386, 388 (1989) (finding that the constitutional standard that "governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person" is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard"). Indeed, the cases cited by plaintiffs in the amended complaint to support the excessive-force claim are Fourth Amendment cases. Regardless, the amended complaint asserts a Fourteenth Amendment violation and, liberally construing the amended complaint in favor of plaintiffs, the Court will address the merits of both the excessive-force claim (arising under the Fourth Amendment) and the substantive due process claim (arising under the Fourteenth Amendment).

3

burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003) (quoting Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998)).

**Facts**

For purposes of this motion, the Court will construe the facts and all reasonable inferences in a light favorable to plaintiffs. On the evening of May 12, 2006, on his way to a local auction, Mark purchased several alcoholic beverages at a convenience store. While at the auction, Mark consumed the alcohol; further, at some point during the evening, Mark took alprazolam (Xanax). After some time at the auction, Mark and Jason decided to leave together in Mark's van, with Mark driving and Jason riding in the passenger seat.

About 11:15 p.m., McFarland observed Mark's van going fast through traffic. McFarland pulled behind Mark's van and, although Mark initially continued to drive despite McFarland's attempt to stop him, Mark eventually pulled his van to the side of the road. Upon McFarland's request, Mark produced a valid Missouri driver's license and proof of insurance. McFarland then conducted

4

a warrant check on Mark,[5] after which he issued Mark four citations: (1) one citation for careless and reckless driving; (2) one citation for failure to yield; and (3) two citations for driving over the centerline. McFarland did not conduct any sobriety tests, and released both Mark and Jason to continue on their way.[6]

Between six and thirty minutes after the stop,[7] the vehicle operated by Mark was driven off the road, struck an embankment, and overturned. Both Mark and Jason died in the accident. A toxicology report showed that Mark had alprazolam (Xanax) in his body and a blood alcohol content of 0.13% grams per millimeter.

---

[5]Although McFarland was informed that Mark had several prior criminal convictions, the warrant check indicated no outstanding warrants for his arrest. Plaintiffs claim that Jason did not have a driver license at the time of the stop, and had a warrant for his arrest out of the State of California.

[6]McFarland claims that he did not suspect that Mark was intoxicated.

[7]Plaintiffs' amended complaint avers that "approximately thirty (30) minutes after Defendant McFarland cited Defendant Mark Abney and released him, Defendant Mark Abney wrecked his vehicle on CRD Old Highway 8 in St. Francois County, Missouri," while plaintiffs' statement of material facts states that "approximately 6 minutes after McFarland...made radio messages to dispatch that the stop of Mark Abney and Jason Abney was complete, the vehicle driven by Mark Abney was driven off the road, struck an embankment and overturned near the intersection of Old Highway 8 and Mayberry Lane." Doc. #65, p. 3; Doc. #23, p. 4.

**Discussion**

**A. Federal Law Claims**

To state a claim under 42 U.S.C. § 1983, plaintiffs must show that "persons acting under the color of state law deprived [Jason] 'of rights, privileges, or immunities secured by the Constitution.'" Gregory v. City of Rogers, 974 F.2d 1006, 1009 (8th Cir. 1992) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986)). In this case, it is not disputed that defendants were acting under the color of state law. Therefore, the "threshold inquiry" is whether McFarland and the City of Park Hills deprived Jason of a right secured by the Constitution. Id. The Court will consider plaintiffs' claims under the Fourth Amendment and the Fourteenth Amendment.

**1. Fourth Amendment Unreasonable and Excessive Force Claim**

The amended complaint argues that McFarland used excessive force when he "released [Jason] to the custody of...a drunk driver." Doc. #23, p. 5. The right to be free from excessive force is a "clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998) (citing Graham, 490 U.S. 386). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, 'the test is whether the amount of force used was

6

objectively reasonable under the particular circumstances.'" Littrell v. Franklin, 388 F.3d 578, 583 (8th Cir. 2004) (quoting Greiner v. City of Champlin, 27 F.3d 1346, 1354 (8th Cir. 1994)). Consequently, a Fourth Amendment excessive-force violation occurs only when a person, who is "seized," is subjected to an objectively unreasonable amount of force.

"For Fourth Amendment purposes, a police officer 'seizes' a person when he, by physical force or show of authority, limits that person's liberty." Gardner v. Buerger, 82 F.3d 248, 251 (8th Cir. 1996) (citing California v. Hodari D., 499 U.S. 621, 625-26 (1991)). In examining whether a seizure took place, a court must ask whether "a reasonable person would feel free to...terminate the encounter." U.S. v. Roby, 122 F.3d 1120, 1124 (8th Cir. 1997) (citing Florida v. Bostick, 501 U.S. 429, 437 (1991)).

A "seizure occurs even when an unintended person or thing is the object of the detention or taking...." Brower v. County of Inyo, 489 U.S. 593, 596 (1989) (citing Hill v. California, 401 U.S. 797, 802-805 (1971); Maryland v. Garrison, 480 U.S. 79, 85-89 (1987)). In the context of a traffic stop, the Supreme Court recently stated that a passenger in a vehicle that has been stopped by law enforcement officers is a seized person. See Brendlin v. California, - U.S. -, 127 S. Ct. 2400, 2410 (2007) ("[The passenger] was seized from the moment [the driver's] car came to a halt on the side of the road....").

7

In the case at hand, it is clear that Jason — a passenger in a vehicle stopped by a law enforcement officer — was temporarily seized. For the entire duration of the seizure, however, the van was stopped, and no evidence indicates that Jason was physically injured or otherwise subjected to unreasonable or excessive force. Further, when McFarland allowed both Jason and Mark to leave, the seizure ended. At that point, Jason was free to remain in the van (as he chose to do), or exit the van and walk away.

There is no evidence that Jason attempted to leave the van but was — by physical coercion or a show of authority — forced to remain in the van. Accordingly, the Court finds no constitutional deprivation, and will grant summary judgment in defendants' favor with regard to the claim of excessive force.

**2. Fourteenth Amendment State-Created Danger Doctrine**

Generally, a government actor has no affirmative obligation to protect private individuals against private violence. Avalos v. City of Glenwood, 382 F.3d 792, 798 (8th Cir. 2004). Nevertheless, the Fourteenth Amendment does carve out two narrow exceptions which provide a private citizen recourse against a government actor for injuries caused by other private citizens. "First, the state owes a duty to protect those in its custody. Second, the state owes a duty to protect individuals if the state

created the danger to which the individuals are subjected." Id. at 799 (citing Gregory, 974 F.2d at 1010).[8]

The plaintiffs in this case rely on the latter — the "state-created danger" theory:

> Under the state-created danger theory, the plaintiffs must prove (1) they were members of a limited, precisely definable group; (2) [the defendant's] conduct put the plaintiffs at significant risk of serious, immediate, and proximate harm; (3) the risk was obvious or known to [the defendant]; (4) [the defendant] acted recklessly in conscious disregard of the risk; and (5) in total, [the defendant's] conduct shocks the conscience.

Id. However, "§ 1983 does not turn the Fourteenth Amendment into a font of tort law that supersedes the tort systems already available under individual state laws," Gregory, 974 F.2d at 1009, and "the test we employ to ascertain a valid substantive due process violation is 'whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said

---

[8]Since the amended complaint asserts a claim of excessive force under the Fourteenth Amendment, it could fairly be read to be a Fourteenth Amendment claim of failure to protect an individual taken into custody. However, the Court has already determined that Jason was not in custody or in any way seized at the time of the accident, and therefore such a claim is not supported by the facts of this case.

Further, the Eighth Circuit has observed "that if [a plaintiff] cannot win his case under Fourth Amendment standards, it is a certainty he cannot win it under the seemingly more burdensome, and clearly no less burdensome, standards that must be met to establish a Fourteenth Amendment substantive due process claim." Wilson, 209 F.3d at 716. Accordingly, since the Court has already stated plaintiffs in this case cannot recover on a claim of excessive force under the Fourth Amendment, the Court will dismiss the Fourteenth Amendment substantive due process claim of failure to protect an individual in custody.

to shock the contemporary conscience,'" Avalos, 382 F.3d at 799 (quoting Hawkins v. Holloway, 316 F.3d 777, 780 (8th Cir. 2003)).

To avoid unwarranted application of the state-created danger doctrine, the Eighth Circuit has emphasized the distinction between a private person's acts — whose conduct, although possibly egregious, is not to be considered — and the state's acts. Further, a court's focus should remain on the additional harm caused by the state's acts. "We are mindful that drawing a distinction between exposing a [person] to a dangerous environment and returning [that person] to an equally dangerous one may seem to some to be gratuitous....But we see the distinction nevertheless." S.S. v. McMullen, 225 F.3d 960, 963 (8th Cir. 2000). In other words, the threshold question is not "could the state have prevented the plaintiff's injury," but rather is "did the state act in such a way that the plaintiff was in no worse a position than if the state had done nothing." See id. If the answer to the latter question is "yes," there is no constitutional violation.

Plaintiffs cite a Ninth Circuit case, Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989), to support their claim that Jason's Fourteenth Amendment rights were violated. In Wood, the plaintiff alleged that she was a passenger in a vehicle stopped in a high-crime area by the defendant police officer. After determining that the driver was intoxicated, the officer impounded the vehicle, arrested the driver, and refused to take the passenger to a safe place, leaving the passenger stranded on the side of the road. The

10

passenger started to walk home, but accepted a ride with a stranger and was subsequently raped. The circuit court reversed the district court's grant of summary judgment, finding that "[a]lthough [the officer] did not himself assault [the plaintiff], he allegedly acted in callous disregard for [the plaintiff's] physical security, a liberty interest protected by the Constitution," and that the plaintiff "raised a triable issue of fact." Id. at 589.

The facts of the case currently before the Court are significantly different from those in Wood. In Wood, the court noted that it was the government's actions that created the dangerous situation. Had the officer in that case not stopped the vehicle, not arrested the driver, and not impounded the automobile, the plaintiff would not have been left stranded in the middle of a high crime area at night. Conversely, in this case, Jason was a passenger in the car driven by Mark before McFarland executed a stop of the vehicle, and allowing Mark and Jason to continue on their way did not effect a change in Jason's physical security. If there had been no government action — i.e., if McFarland had not stopped Mark's vehicle — Jason would have been in exactly the same dangerous situation. Accordingly, defendants' motion for summary judgment will be granted with regard to plaintiffs' substantive due process claim.

Defendants are entitled to summary judgment in their favor on plaintiffs' § 1983 claims against McFarland.[9] Similarly, since the alleged facts do not show a constitutional violation by McFarland, the City of Park Hills is not liable under § 1983. See Sinclair v. City of Des Moines, 268 F.3d 594, 596 (8th Cir. 2001) ("The City cannot be liable...whether on a failure to train theory or a municipal custom or policy theory, unless [an officer] is found liable on the underlying substantive claim."). Consequently, the Court will grant defendants' motion for summary judgment with regard to Counts I and II of the amended complaint.

**B. State Law Claim**

Count IV of the amended complaint asserts a state law wrongful death claim. Although the Court finds that plaintiffs' claims under 42 U.S.C. § 1983 are subject to summary judgment, the Court will exercise its supplemental jurisdiction over the wrongful death claim.

The Missouri wrongful death statute states that "[w]henever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in

---

[9]Defendants also argue that, for the § 1983 action, they are entitled to qualified immunity. In determining whether a state actor is entitled to qualified immunity, a court must first ask "did the official deprive the plaintiff of a constitutional or statutory right? If not, [the state actor] does not need qualified immunity, as he is not liable under § 1983." Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007). The Court has already determined that there was no constitutional violation, and therefore it need not decide the issue of qualified immunity.

12

respect thereof, the person or party who...would have been liable if death had not ensued shall be liable for damages, notwithstanding the death of the person injured...." Mo. Rev. Stat. § 537.080. Accordingly, the wrongful death statute does not provide, in and of itself, an independent basis for liability; rather, the wrongful death statute proves a means through which a defined class of persons can recover damages pursuant to a cause of action that, but for the injured person's death, would have provided the injured person a basis for recovery. See Caldwell v. Lester E. Cox Medical Ctrs.-S., Inc., 943 S.W.2d 5, 8 (Mo. App. 1997) ("[D]eath resulting from any tortious act gives rise to a right of action for wrongful death rather than a personal tort."); see, e.g., Heffernan v. Reinhold, 73 S.W.3d 659, 665 (Mo. App. 2002) ("Plaintiffs must establish the following elements in order to succeed on wrongful death claim on a theory of negligence: (1) the defendant owed a duty of care to the decedent; (2) the defendant breached that duty; (3) the breach was the cause in fact and the proximate cause of his death; and (4) as a result of the breach, the plaintiff suffered damages.").

In this case, Count IV of the amended complaint does not state a clear underlying basis for the wrongful death claim. Instead, Count IV avers that McFarland's actions were "unlawful and unjustified." Doc. #23, p. 10. Nonetheless, the Court finds that if plaintiffs bring their wrongful death claim pursuant to an alleged constitutional violation based on either the Fourth or

13

Fourteenth Amendment, such a claim fails for the same reasons plaintiffs' § 1983 claims fail.

Although not explicitly represented as a negligence action, if plaintiffs intend their wrongful death claim to be based in negligence, such a claim similarly fails. McFarland's decision to allow both Mark and Jason to go on their way involved McFarland's "exercise of reason in developing a means to an end and the employment of judgment to determine how or whether an act should be performed or a course pursued." James ex rel. James v. Friend, 458 F.3d 726, 731 (8th Cir. 2006). In other words, his decision required a significant amount of discretion, and "[u]nder Missouri law, the doctrine of official immunity protects public officials from civil liability for injuries arising out of their discretionary acts or omissions performed in the exercise of their official duties." Id. McFarland, therefore, is entitled to official immunity. Further, the City of Park Hills is entitled to sovereign immunity "against claims for the negligence of its employees." Moses v. County of Jefferson, 910 S.W.2d 735, 736 (Mo. App. 1995). Accordingly, the Court will dismiss Count IV of the plaintiffs' amended complaint.

For all the foregoing reasons, defendants will be granted summary judgment on Counts I, II, and IV of the amended complaint. Counts III and V have previously been dismissed. See Doc. ##51, 55.

14

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc. #57] is **GRANTED**, and Counts I, II, and IV of plaintiffs' amended complaint [Doc. #23] are dismissed with prejudice.

Dated this ___5th___ day of October, 2007.

/s/Donald J. Stohr  
UNITED STATES DISTRICT JUDGE